Dynan *v.* McCulloch.

---

### THOMAS DYNAN

*v.*

### ROBERT McCULLOCH.

46 11
s46 608
59 170

A vendor, in a written receipt for part of the purchase-money of certain described lands, agreed to convey them to the vendee in fee, free from all encumbrance, upon the payment of the balance in cash within five days thereafter. The vendee made several *bona fide* but unsuccessful efforts to find the vendor and pay him as stipulated, and a judgment against the vendor meanwhile remained a lien on the premises. Twelve days after the expiration of

the time limited the vendee tendered the balance of the purchase-money to the vendor, and upon his refusing it, deposited it in a neighboring bank, ready to pay him at any time. On a bill for specific performance, filed shortly afterwards—*Held*, that time was not of the essence of the contract, and that the *status* of the parties was not so changed by the delay that the enforcement of the contract would be inequitable or unjust.

On bill for specific performance.

*Mr. John S. Barkalow*, for the complainant.

*Mr. Alfred A. Van Hovenberg*, for the defendant.

THE CHANCELLOR.

On the 30th of July, 1888, the parties to this suit entered into the following contract for the purchase and sale of land in the city of Paterson :

" Received, Paterson. July 30, 1888, the sum of one hundred dollars in part payment of the purchase-money of forty-five hundred dollars, for twelve lots, situated in the city of Paterson, on the northeast corner of Madison and Getty avenues, being one hundred feet front on Getty avenue and three hundred feet on Madison avenue, the balance of said purchase-money to be paid by Mr. Thomas Dynan to Mr. Robert McCulloch on said McCulloch's delivering a warranty deed, free from all encumbrances, for the premises mentioned, to Mr. Dynan within five days from date.          " ROBERT McCULLOCH."

As originally drawn by the attorney of the complainant the contract provided that it should be executed within ten days from its date, but when it was submitted to the defendant, McCulloch, for his signature, he declared that he was in need of money and that the time should be reduced to five days, and, upon the complainant's stating that he desired only sufficient time to obtain the money from his son in Connecticut, the defendant crossed out the word " ten " and wrote " five " in its place.

The agreement thus executed did not specify the place at which the deed should be delivered and the balance of the money paid. On the morning of Thursday, August the 2d, Dynan called upon McCulloch at his place of business and informed him that two judgments, apparently liens upon the property, remained unsat-

isfied of record. McCulloch replied that the judgments had been paid, but that, nevertheless, he would obtain satisfaction pieces for them. It was then agreed that the deed should be prepared and the satisfaction pieces obtained, and that the parties would meet that night and perform their agreement.

To this point in the narrative of this transaction the testimony is not conflicting. The first and most troublesome conflict is as to the place agreed upon for the consummation of the contract. Dynan, who appears to have taken the initiative, and to have been most anxious to have the place fixed, swears that it was the office of one Blauvelt, a real estate agent in Paterson, while McCulloch, his housekeeper and an employee testify that it was the defendant's residence. When the night came, Dynan went to Blauvelt's office, prepared to carry out the contract upon his part, and McCulloch remained at his residence. McCulloch had then failed to obtain a satisfaction piece for one of the judgments, and was therefore not prepared to carry out the contract according to the understanding had that morning. Neither party tried to find the other that night. The next morning (Friday) Blauvelt went away for a short vacation, from which he did not return until the following Monday. Upon his return the complainant requested him to see McCulloch about carrying out the contract. When Blauvelt saw McCulloch the latter declared the contract to be at an end, because the balance of the purchase-money had not been paid within five days. Dynan says that, after Mr. Blauvelt informed him that McCulloch would not carry out the contract, he frequently, sometimes twice in a single day, called at McCulloch's house and place of business, for the purpose of finding him, to induce him to perform the contract, and that he also urged Blauvelt to try and find McCulloch, and that he is satisfied that McCulloch intentionally evaded him. Blauvelt says that he also tried to find McCulloch, but without success. McCulloch, on the other hand, denies that he evaded Dynan or purposely absented himself from home for such purpose. Whatever the truth may be as to the defendant's intentional evasion of the complainant, I am satisfied of two facts— that Dynan, in good faith, sought McCulloch, and that McCulloch,

because he thought that Dynan had arranged to resell the land with profit, did not desire to carry out his contract. The questions put to Dynan upon his cross-examination, concerning his purpose in buying the land, satisfy me of this, and the failure of McCulloch to use Dynan's check for the $100 awakens the suspicion that McCulloch's reluctance to carry out the agreement antedated the expiration of the five days limited in the contract.

On the morning of August the 16th, Dynan saw McCulloch at his place of business and tendered him the balance of the purchase-money, which he refused to accept. Later in the same day the money so tendered was specially deposited in bank, where it has been kept in readiness to pay the defendant at any time. Shortly after the tender and deposit were made this suit was commenced.

It is urged for the defendant that the time limited in the contract was of its essence, and that Dynan's failure to tender the remainder of the purchase-money within that time, disentitles him to the relief he now asks.

The general rule in equity is, that time is not of the essence of the contract, unless the parties have expressly so stipulated, or unless it follows, by necessary implication, from the nature of the property dealt with or the avowed objects of the seller or purchaser. *King* v. *Ruckman, 6 C. E. Gr. 599; Taylor* v. *Longworth, 14 Pet. 172.*

The contract before me does not contain an express stipulation that time shall be of its essence. The defendant is to be paid money. The court may ordinarily compensate for delay in the payment of money by the allowance of interest, hence from mere designation of time for the payment of money there can be no necessary implication that time was intended to be of the essence of the contract. Professor Pomeroy, in his work on *Contracts* § *374,* in speaking of the doctrine that time is not ordinarily essential in equity, says:

"It is beyond all doubt that the doctrine under consideration applies with special force, and will always be applied—except in very special cases where the intention that it should be essential is expressed in the clearest manner by positive stipulation—to promises to pay money. A default in the payment at

the day appointed, unless the delay be from such a cause or be continued so unreasonably long as to be a ground for rescission, will always be relieved; in other words, the mere suffering the pay day to pass will not preclude the party from enforcing the contract. The reason is that, by a payment of the principal and the interest for the time which has elapsed, equity considers the creditor party as fully compensated."

If property were sold for less than its value because of the owner's pressing need of money, for use within the time specified in the contract, I think there could be little question that time would be considered as of the essence of the contract. But no such circumstance appears in this case. Here, the defendant expressed a desire that the contract should be consummated in less than ten days from the time when it was made. The complainant was willing to perform upon his part with all possible dispatch. All the time that he stipulated for, was that which would enable him to send to his son, in Connecticut, for the money. Here, then, was an understanding, not arbitrarily to fix a day within which there must be a performance, but to appoint a short day to induce expedition in concluding a business transaction. It nowhere appears that it was understood between the parties that if the money was not forthcoming within five days the contract would be at an end. Although the defendant excused his desire for haste by the assertion that he was in need of money, he has not testified, or shown in any way, that, in fact, he was in need of it. Indeed, his failure to use the complainant's check is an indication that he was under no such pressing need. Nor does it appear that the lots were sold for less than their fair value.

I fail to find in the case anything that will justify me in holding that the time limited was of the essence of the contract.

Though time may not be expressly or impliedly of the essence of a contract, the party seeking specific performance after the limit, within which, according to the terms of the contract, he should have acted, has expired, comes to a court of equity not to demand a right, but to invoke the exercise of a just discretion. Professor Pomeroy, speaking of time, says:

"If it is not essential, equity may permit the act to be done after the day; *may* permit, not *must;* for the delay or failure may be such, or from such a cause, that equity will refuse to interfere." *Pom. Cont. ¾ 373.*

His delay may arise from gross laches or inexcusable negligence, or, during it, material changes in circumstances affecting the rights, interests or obligations of the parties, may supervene, which may render it inequitable or unjust to specifically enforce the contract.

It is in this light that equity ordinarily regards time as important when an application is made to it to compel the specific performance of an agreement.

I find no gross laches or inexcusable negligence on the part of the complainant in this case, and no equity appears to dispute the justice of his claim to the relief he asks. He was ready, prompt, diligent and eager in his efforts to find the defendant and demand the fulfillment of the contract.

To the defendant's objection, that the contract cannot be enforced because it is unilateral, it is only necessary to say, that by filing his bill the complainant put himself under the obligation of the contract, so that he may now be compelled to perform it. *Richards* v. *Green, 8 C. E. Gr. 536 ; Reynolds* v. *O'Neil, 11 C. E. Gr. 223 ; Carskaddon* v. *Kennedy, 13 Stew. Eq. 259 ; Woodruff* v. *Woodruff, 17 Stew. Eq. 349.*

The complainant is entitled to the relief he seeks.